## BARTON v. McKELWAY.

1. In an action on a covenant to deliver a number of trees at a certain time and place, if plaintiff proves that he offered the trees at such time and place, and left them there, it is no defence, that no one was there, on part of the defendant, to examine, count, and receive the trees. A party cannot· evade a contract by absenting himself from the time and place of performance.

2. In an action on a covenant to deliver a number of morus multicaulis trees of not less than one foot high, it is competent for the defendant to show that, by the universal custom and usage of all dealers in that article, the length was measured only to the top of the ripe wood, rejecting the green immature top; and this, although the trade had existed only for a few years. It is not necessary that such usage be immemorial. Usage can be proved to explain a doubtful contract, not to contradict an explicit one.

This was an action of covenant, brought in this court by Henry N. Barton against John McKelway, upon the articles of agreement given in evidence at the trial, to recover the price of 13,800 moris multicaulis trees, delivered to the defendant by Joseph C. Potts and Edwin I. Cooper, on the 14th of November, 1839. The trial of the cause was had before Justice Randolph, at the Mercer circuit, at September term, 1846. On the trial, the plaintiff proved and gave in evidence the following articles and letter :

1. Articles of agreement, made and entered into this twenty-first day of March, eighteen hundred and thirty-nine, between Henry N. Barton, of the city of Trenton, county of Mercer, and state of New Jersey, of the one part, and Joseph C. Potts, of the same place, and Edwin I. Cooper, of the city of Philadelphia, of the other part, witnesseth, that the party of the first part will forthwith convey in fee simple, clear of all encumbrances, his row of three new houses, with the lots on which they stand, fronting on Lamberton-street, in the village of Bloomsbury, Mercer county aforesaid, running in depth one hundred feet from the northeasterly corner to the rear line of the said lots, crossing at right angles the said lots ; and shall further complete the same in all things, according to the present plan of the said Barton for building the same, in the best manner and of the best materials, paving the sidewalks in front of the same, and curbing the same, and fencing, with a

neat ornamental fence, the yards in front, and paving a suitable pathway up to the door, and sodding with grass the spaces between the pavements and porches in front; each door to have over it an ornamental portico, a Grecian balustrade to ornament the roof in front, and a lattice balustrade in the rear; the kitchens, to be built to the houses, to be twelve feet square, and set six feet from the houses connected therewith, with entries two and a half feet wide, and piazzas six feet wide; the whole to be painted with two good coats of paint, except where left rough for whitewashing, in which places to be whitewashed; fences to be made around, and dividing the gardens, and suitable privies to each house, at least eight feet in depth, well and substantially built and whitewashed; the well to the said houses to be of a suitable depth of water, and to be furnished in a proper way to be used. In consideration whereof, the said parties of the second part agree to deliver to the said party of the first part their bond, duly executed for five hundred dollars, payable on the first day of April, eighteen hundred and forty, and also to deliver to the said party of the first part, on or before the fifteenth day of April next ensuing the date hereof, twenty-eight thousand cuttings of lively and vigorous trees of the morus multicaulis, and also covenant and agree to deliver to the said party of the first part thirteen thousand eight hundred and forty-eight morus multicaulis trees of the growth of the ensuing summer (1839). The trees to be taken and counted as the field shall run, except that no tree shall be counted being less than one foot high; the trees to be delivered in the city of Trenton, during the month of October, at such time and place as the said party of the first part shall select and give notice of, ten days previous in writing, to the said party of the second part. Provided nevertheless, and it is hereby distinctly agreed, that if the said party of the second part shall sell the said trees at any time before the first of October next, (to which end they hereby retain the exclusive right over the said trees, to make sale thereof up to that time,) then the said party of the second part shall pay in money to the said party of the first part at the rate of thirteen cents and a half for each tree so sold, to be paid on

the first day of October next. In witness whereof, the said parties have hereunto set their hands and seals the day and year first above written.

| | |
|---|---|
| HENRY N. BARTON, | [L. S.] |
| JOSEPH C POTTS, | [L. S.] |
| E. I. COOPER, | [L. S.] |

Signed, sealed, and delivered in the presence of—[Agreed before signing that Barton is to have the house he lives in, until the first day of April, 1840, free of rent, and that he is to have the rents of the other two houses until the first of October, 1839.]

Barton and Potts signed in presence of

SAMUEL KAY.

E. I. Cooper signed in presence of

IVES CUNNINGHAM.

2. Articles of agreement made and entered into this nineteenth day of April, eighteen hundred and thirty-nine, between Henry N. Barton, of the county of Mercer, of the first part, and John McKelway, of the same place, of the other part, witnesseth, that the said Barton, in consideration of the covenant hereafter mentioned covenants and agrees that the said McKelway shall have all the right and title and interest which the said Barton now has, to a certain lot of morus multicaulis trees deliverable to him in October next by Joseph Potts and Edwin I. Cooper, and the said McKelway's receipt for the same shall be a full discharge therefor. In consideration whereof, the said McKelway covenants and agrees to pay to the said Barton at the rate of ten cents a tree for each of said trees, upon delivery of the same by the said Potts and Cooper to the said McKelway. In witness whereof, the said parties have hereunto put their hands and seals the day and year first above written.

| | |
|---|---|
| HENRY N. BARTON, | [L. S.] |
| JOHN McKELWAY, | [L. S.] |

Signed, sealed, and delivered in presence of

JOS. C. POTTS.

3.                                    TRENTON, October 28, 1839.

Messrs. Cooper and Potts.

SIRS,—You will please not to take up the morus multicaulis trees, now growing by you for me, as the mildness of the season has prevented them from maturing as much as was expected when I contracted for them.  Unless I give you further written orders, agreeably to the contract, you will please deliver the trees on the 15th of November next, at the house of Dr. John McKelway, in Trenton, or to his written order.

   Your obedient servant,

        HENRY N. BARTON.

The above order is given with my consent, and agreeably to my wishes.

        JOHN McKELWAY.

The plaintiff further proved that Potts and Cooper, on the 14th and 15th days of November, 1839, dug up 14,000 morus multicaulis trees, and, on the 15th, delivered them at the door of the defendant's residence at Trenton; that the defendant was not at home, nor was there any person there to receive them; that the defendant's wife refused to permit them to put them on the premises, and thereupon they placed them on the sidewalk in front of his house, against the fence; that the defendant, a day or two afterwards, had them put in his cellar and counted; that, in this number of 14,000 trees, all trees were counted that measured not less than a foot, measuring from the root to the top of the stem, including as well the green part as the ripe wood.

The plaintiff also proved and gave in evidence the following letters.

       TRENTON, November 16, 1839.

Mr. Potts.

Dear sir,—Will you have the goodness to let me have a copy of the paper which Henry N. Barton and myself signed on the 29th ult., and oblige your most ob't,

        JOHN McKELWAY.

To Messrs. Joseph C. Potts and Edwin I. Cooper.

Gentlemen,—On my return home, on the evening of the 16th November last, I found a quantity of morus multicaulis mulberry trees piled on the pavement in front of my house. I was informed by my family, that you, or your agents, had placed them there, saying, at the time of doing so, that they were delivered there in fulfilment of a certain contract made between you and Henry N. Barton, dated 21st March, 1839, by which you were bound to deliver to Mr. Barton thirteen thousand eight hundred and forty-eight morus multicaulis mulberry trees of the quality and description mentioned in the contract, and that all Mr. Barton's interest in the trees mentioned in the contract having been assigned to me in April last, the trees deposited at my door were therefore brought there in fulfilment of that contract. Shortly after my return home, it being late on Saturday evening, I put the trees into my cellar, to have them out of the way on Sabbath, and in order to examine them to see if they were in number, quality, and description according to the contract. I have since, and at as early a day as I could conveniently, had them examined, measured, and counted, under my direction, and find that they are not such trees as are called for by the contract, the trees left by you being altogether different in quality and description from those which you were by the terms of the contract bound to deliver. I cannot, therefore, receive them, and accordingly I return them to you, that you may dispose of them as you deem proper. Your most ob't ser't,

JOHN McKELWAY.

Trenton, December 2, 1839.

These papers being read to the jury, the plaintiff, by his counsel, rested his case, whereupon the defendant moved the court to nonsuit the plaintiff, for the following reasons:

1. That it appears on the face of the record that no action lies against the defendant on the covenant declared upon.

2. That it appears by the evidence in the cause that no action lies upon the covenant declared upon.

3. That the covenant declared upon is variant from that offered in evidence.

VOL. II.                                L

4. That there is no legal evidence to sustain the issues joined upon the part of the plaintiff.

And the court, after hearing the counsel, overruled the motion to nonsuit the plaintiff.

The defendant opened his defence, and proved that he had the trees moved from the sidewalk to his cellar, and had them counted there; that there were only 9700 trees there not less, than one foot high, measuring from the top of the root to the top of the ripe wood, and rejecting the immature top, which it was proved was of no value for cuttings or propagation of the tree, for which these were bought.

The defendant offered to prove that the universal practice of all dealers in morus multicaulis trees was to measure the top of the ripe wood only, which evidence was rejected by the court.

The defendant proved, that on the 30th of November, 1839, he returned the trees to Mr. Potts, by offering them to him in front of his house in Trenton; that Potts refused to receive them: whereupon they were left on the sidewalk in front of the house. The jury rendered a verdict for the plaintiff for the price of the 13,848 trees.

Upon the coming in of the *postea*, the defendant obtained a rule to show cause why the verdict should not be set aside, and a new trial had.

The argument of this rule came on at April term, 1849, before Justices NEVIUS, CARPENTER, and OGDEN.

*W. L. Dayton*, for the defendant.

A new trial is asked, upon several grounds. 1. There was a variance between the contract set out in the declaration and the evidence to support it. The first covenant was incorporated, by reference, in the second, on which this action was brought. The contract was under seal, but the time of the delivery was extended by parol, that is by writing not under seal. The declaration was therefore demurrable, but it may also be taken advantage of at the trial. An action of covenant cannot be maintained when the extension is by parol, and that is relied upon. *Ford* v. *Canfield*, 6 *Halst.* 327 ; *Lang-*

*worthy* v. *Smith,* 2 *Wend.* 587; *Littler* v. *Holland,* 3 *T. R.* 590, 592, *note; Morgan* v. *Carter,* 4 *C. & P.* 295; 2 *Greenl. Ev.* § 235.

The only question is, if we can take advantage of the difficulty in this mode; but failing in this, we ask that the judgment may be arrested. 1 *Saund.* 154, *note;* 2 *Tidd* 867 (3 *Am. ed.*); *Gregory* v. *Mack,* 3 *Hill* 380; *Boyd* v. *Townsend,* 4 *Ib.* 183, 186.

The principle admitted, they stand on the other side on very narrow ground when they endeavor to distinguish this case. Certainly it was not so understood by the pleader, who has set out an extension of time.

2. The declaration avers a delivery. An offer to deliver is no delivery. Throwing the trees in the street was no delivery, and taking them in the cellar merely to count them was no acceptance.

3. The judge overruled legal evidence. We offered to prove that, by the universal usage of trade in regard to this article, the immature wood was not measured as part of the tree. The trees were bought to be cultivated, and were entirely useless for that purpose. The alleged custom was founded in the nature of the thing; it would be strange if otherwise. 1 *Greenl. Ev.* § 293, and *note; Ib.* § 295, &c.; *Smith* v. *Wilson,* 3 *B. & Ad.* 728.

4. The verdict was against the weight of evidence and the charge of the judge. We showed, by a witness, that Barton had assented to this kind of measurement, and the court told the jury that if he had assented to it, he was bound by it.

*S. G. Potts* and *Vroom,* contra.

Did not deny law as to parol extension of time in sealed instrument, but urged that this was not within the cases cited. The construction of the covenant is, that they were to be ready for delivery during the month of October, to be delivered at any time on ten days' notice. The trees could not be delivered without notice, and within the month the party comes and gives notice, and this is within the spirit and meaning of the contract. All the parties acted upon the understanding that

the trees were to be delivered on a notice to be given in October. The parties had to the last day of that month to give the notice (3 *Wash.* 140), and so the defendant understood it, for he gave notice on the 28th October to deliver on the 15th November. It was no new agreement, but a notice under the agreement.

The allegation, as to extending the time, is surplusage, and may be rejected. 1 *Greenl. Ev.* § 67. But delivery of articles after the stipulated time is good, if the party agrees to it. *Chit. Contr.* 720.

2. Delivery was proved, and it has been so found by the jury. The trees were left at the house of the defendant, in accordance with the notice, and when he came home they were put by him in his cellar.

3. The custom which may be proved to explain the terms of a contract must be one of long established usage. The trade in this case was of a day, and no custom could have grown up in relation to it. 3 *Kent* 260, *note;* 3 *Wash.* 149; 2 *Sumner* 567; 2 *Ib.* 377; *Trueman* v. *Loder,* 11 *Ad. & Ell.* 589; 6 *Bin.* 420; 1 *Watts* 360.

Lastly, that the verdict is against evidence. The case should be very clear to overcome the verdict.

NEVIUS, J. Upon the argument of this rule, the defendant's counsel also discussed, to some extent, a motion in arrest of judgment; but as the adverse counsel refused to enter into that discussion until the question of a new trial was decided, I will restrict my remarks to the latter question.

The suit is for the price or consideration of 13,848 morus multicaulis mulberry trees, alleged to have been delivered by the plaintiff to the defendant, according to contract, on the 15th of November, 1839, at the rate of ten cents a tree. Assuming that, by the terms of the contract, the trees were to be delivered, on the day above mentioned, at the house of the defendant, and were not to be less " than a foot high," that the price to be paid on delivery was ten cents a tree, we easily arrive at the questions involved in the case. On the trial the plaintiff proved, that on the 14th and 15th days of November,

1839, he measured, counted, tied up in bundles and loaded on wagons, carried and delivered, the trees at the house of the defendant, in the city of Trenton; that the defendant was not at home, and his wife refused to receive them or permit them to be laid on his premises; and there being no one else there authorized to receive them, they were laid on the sidewalk in front of the defendant's house. It further appeared in evidence that the defendant, on his return home the day following, caused them to be removed to his own cellar.

The defendant now objects that this evidence does not establish a legal delivery; that there could be no delivery where there was no one duly empowered to examine the nature and quality of the article to be delivered, and to determine whether the same was or was not in conformity with the contract. There is no force or reason in this objection. The defendant was aware of the time and place fixed for the delivery, and had given his written consent to it, and it was his duty to have been there at the time to receive the trees, or to have left an agent to act in his place. He cannot evade his contract by absenting himself from home that day. The plaintiff did all he could, and all that the law bound him to do, to effect the delivery. He carried the trees to the place mentioned in the contract, on the day therein appointed, and there made the only tender and delivery in his power to make. There is no ground in this objection for a new trial.

But it is further objected, that the court below overruled legal and material evidence offered by the defendant on the trial. To get at the point of this objection, it is necessary to refer again to the written contract, which provides, in terms, that the trees to be delivered were not to be less than one foot high. The plaintiff proved that the trees delivered were one foot high, measuring from the top of the root to the top of the stem. The defendant then proved that, after his return home, he caused these trees to be counted and measured, and that, according to such measurement, there were only 9000 trees of a foot high and upwards, and that the rest were rejected, as falling short of that measurement. The mode of measurement adopted by the defendant (according to the evidence) was

from the top of the root to the extent of the ripe or hard wood, and not to the top of the stem. It became apparent, then, that the discrepancy in the count and measurement of the trees, by the different witnesses, arose from the different modes of measuring adopted by them. The defendant then offered to prove by witnesses that the mode adopted by him was the lawful and proper rule; that it was the rule well known and practised by all dealers in that article, from the commencement of the trade until the time when this contract was made; that this custom or usage of measuring mulberry trees, from the top of the root, or bottom of the stem, to the extremity of the matured or hard wood, was uniform and universal in the execution of all contracts for the sale and delivery of the article, made by dealers therein ; that the plaintiff himself and those from whom he had acquired his title to the trees in question, were dealers in the article, residing in the neighborhood where that usage prevailed, and were well acquainted with it.

All this evidence was offered with the avowed purpose of explaining the true intent and meaning of the parties to this contract touching the phrase, " one foot high," and not to alter, contradict, or even modify the terms of the contract.

This evidence was overruled on the trial, and I think erroneously. It is no answer to say, that " tree " is a word of precise and definite signification, or that a " tree " is a " tree," and can be nothing else, and that every body knows what a tree is. It is the qualification contained in the contract that we are to consider in this case. The trees were to be at least a foot high. This involves the question of measurement, and how were they to be measured, while standing and growing in the ground, or after they had been dug from it ? Were they to be measured from the extreme root to the extreme branch (both of which are parts of the tree), or in what other mode were they to be measured, in order to determine their height? It seems to me that the inquiry proposed by the defendant was legitimate and proper, and tended to settle an ambiguity in one part of the contract.

It is a well settled rule of law, that contracting parties

are always presumed to make their contracts with reference to the general custom and usage that appertains to the subject matter of their contract, if any such general custom prevails, and all ambiguous terms or phrases used in expressing such contract may be explained by resorting to such general usage. And all terms and phrases employed by parties to express their intentions, if at all ambiguous, are to be construed in conformity with such usage, in order to arrive at their true intent and meaning. *Doug.* 513. It is not necessary that a usage of trade should have existed immemorially ; *it is sufficient if it is established, known, uniform, and reasonable, and not contrary to law. Its true office is to interpret the otherwise indeterminate intention of parties, and the nature and extent of their contracts, and fix and explain the meaning of words.* 2 *Greenl. Ev.* 251. The defendant's offer was, to prove that the trade in mulberry trees was of recent origin in this country, and that the practice of measuring them in the manner pursued by him commenced with, and uniformly continued with the trade itself, as long as it lasted, and was known to all dealers in that trade. I think this offer ought not to have been overruled. The jury were called upon to decide whether the plaintiff's or the defendant's rule of measurement was the true rule, and they could do that satisfactorily only by being informed of the usage that appertained to the subject matter of the contract, and that usage was good evidence to explain the intention of the parties. 2 *Star. Ev.* 455.

But, apart from the reasonable and well settled principle of the law of evidence, the nature of the thing contracted for and the object of the parties rendered the evidence lawful. The defendant was the purchaser of these trees, and in his contract he provided that they should be one foot high. For what purpose ? Why a foot high, rather than six inches high ?. The plain and obvious answer is, that he might have a tree which, when divided into parts, would produce, when planted, a tree from every part, that is, that each part would vegetate. But all the witnesses proved that the part of the tree which did not consist of ripe or hard wood was entirely worthless, had not in itself a power of vegetation, but, as soon as the tree

was removed from the ground, wilted and died. How, then, could the parties have contemplated that worthless part of the stem of the tree as a portion to be paid for by the terms of the contract.

I think the court erred in overruling the evidence offered by the defendant, as it had a legitimate bearing on the issue, and for that reason that the verdict should be set aside, and a new trial granted.

CARPENTER and OGDEN, Justices, concurred.

New trial granted.